**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**ANTHONY G. SCLAR, DMD, individually, and on behalf of all those similarly situated,**

**Plaintiff,**

**v.**

**OSTEOMED, L.P.,**

**Defendant.**

**Case No.:**

**Jury Trial Demanded**

## CLASS ACTION COMPLAINT

Plaintiff, ANTHONY G. SCLAR, DMD, individually, and on behalf of all those similarly situated who reside in Florida, as defined below, brings this Complaint against OSTEOMED, L.P. ("Defendant" or "OSTEOMED"). This Complaint is based upon personal knowledge, information and belief, and the investigation and research of counsel.

## NATURE OF THE ACTION

1. This is a class action brought under Fed. R. Civ. P. Rules 23(a), (b)(2) and (b)(3) on behalf of all persons who purchased the OsteoPower System™ manufactured, distributed and sold by Defendant OSTEOMED. This class action seeks injunctive relief and recovery of all available damages and other monetary relief available under Florida common and statutory law.

2. This case is brought to address Defendant's unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce in directly

participating in the manufacturing, marketing, and sale of a product without disclosing the dangers of the product to their purchasers or warning the purchasers of such danger in violation of the Florida Unfair and Deceptive Trade Practices Act and the Magnuson-Moss Warranty Act.

**PARTIES**

3. Plaintiff, Anthony G. Sclar, DMD, is a natural person and citizen of Florida, whose principal place of residence is in Miami, Florida and who, at all times material to this action, was a citizen of Miami, Florida.

4. Defendant, OSTEOMED, L.P., is a Texas limited partnership with its manufacturing facility and world headquarters located in Addison, Texas. It may be served through its registered agent at 3885 Arapaho Road Addison, TX 75001.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because the class comprises at least 100 plaintiffs, a member of the Plaintiff Class is a citizen of a state differen t from Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

6. This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the benefits of the forum state by marketing and selling the OsteoPower System™ to consumers in Florida. The Court further has personal jurisdiction over Defendant pursuant to the provisions of Fla. Stat. § 48.193 (1)(a)(6) because the claims arise out of Defendant's design and marketing of a product manufactured by Defendant and used or consumed within this State in the ordinary course of commerce, trade, or use.

7. Venue is proper in this district pursuant to 28 U.S.C.A. § 1391(b)(2) as a substantial part of the events giving rise to this claim occurred in this District.

## FACTUAL ALLEGATIONS

### The Drill

8. The OsteoPower System™ ("the drill") is a rotary bone cutting drill that is manufactured by Defendant OSTEOMED.

9. The drill emits dangerous levels of noise that result in permanent hearing loss to the user.

10. The drill's user manual makes no mention of its excessive decibel emission, and does not warn the user of this product's danger.

11. Plaintiff, Dr. Anthony Sclar, is an oral surgeon in Miami, Florida where he has practiced for more than 26 years.

12. Plaintiff purchased the OsteoPower™ System from Defendant. Plaintiff did not know at the time that he purchased the drill that it emitted dangerous noise levels that would harm his hearing. Plaintiff would not have purchased the OsteoPower System™ had he known of Defendant's deceptive and fraudulent failure to disclose the drill's dangers or warn him about them.

### The Harm

13. OSTEOMED is actively engaged in a scheme to mislead consumers so that they will pay full price for the OsteoPower System™. These consumers purchased a product labeled and marketed as a drill with no adverse effects, when it is in fact different than advertised, and is dangerous enough to cause permanent and severe hearing loss. Defendant's scheme results in not only physical injury to the consumers' sense of hearing, but also economic loss in the form of the diminished value of the product.

14. An organization within the U.S. Department of Health & Human Services, the National Institute on Deafness and Other Communication Disorders (NIDCD), advises that long-term or repeated exposure to sounds at or above 85 decibels can cause hearing loss. For reference, the NIDCD offers average decibel ratings of some familiar sounds:

- The humming of a refrigerator
  45 decibels
- Normal conversation
  60 decibels
- Noise from heavy city traffic
  85 decibels
- Motorcycles
  95 decibels
- An MP3 player at maximum volume
  105 decibels
- Sirens
  120 decibels
- Firecrackers and firearms
  150 decibels

15. The National Institute for Occupational Safety and Health (NIOSH) Recommended Exposure Limit for occupational noise exposure is <u>85 decibels</u>. Exposures at or above this level are considered hazardous.

16. Defendant's drill operates at a level of <u>**105 decibels**</u>. Although this amount of decibels significantly exceed the recommended range for hearing exposure, it is not disclosed in the product manual for the OsteoPower System™.

17. Noise-induced hearing loss can be both severe and permanent. The level of risk and type of noise determine whether a specific noise can be hazardous to hearing. The louder the sound, the shorter the amount of time it takes for noise-induced hearing loss to occur. In addition to loss

of hearing, hazardous levels of noise for extended periods of time can result in a disorder known as tinnitus.

18. Tinnitus is the persistent perception of sound when no actual external noise is present. While it is commonly referred to as "ringing in the ears," tinnitus can manifest many different perceptions of sound, including buzzing, hissing, whistling, swooshing, and clicking. In some rare cases, tinnitus patients report hearing music. Tinnitus can be both a chronic and debilitating malady that interferes with daily life.

19. As a result of Defendant's failure to disclose its product's unsafe decibel level, hundreds of reasonable consumers purchased the OsteoPower System™, because they reasonably relied on representations by OSTEOMED that the product was properly manufactured, fairly represented, and above all, safe for them to use.

20. Plaintiff and other consumer class members suffered actual damages in that the market value of the OsteoPower System™ Plaintiff and other consumer class members purchased was less than the market value of a comparable drill that does not emit unsafe levels of noise. As a misrepresented and deceptively marketed product, the OsteoPower System™ sold to Plaintiff and consumer class members in fact had a market value of zero.

21. As a result of OSTEOMED's failure to disclose that the drill emitted dangerous levels of noise, Plaintiff and other consumer class members purchased a product that was neither safe nor fit for sale, which resulted in economic harm to the Plaintiff and other consumer class members, namely the full purchase price of the OsteoPower System™.

22. Additionally, OSTEOMED was unjustly enriched by generating revenue derived under inequitable circumstances, including failing to disclose the danger of the drill to those who purchased it.

**PLAINTIFF'S INDIVIDUAL ALLEGATIONS**

23. Plaintiff, on his own behalf and on behalf of the Class Members, repeats and fully incorporates paragraphs 1 - 22 above as if fully set forth in this Count.

24. Plaintiff is a consumer pursuant to Florida Statutes § 501.203[1], who purchased the OsteoPower System™.

25. Plaintiff was misled by the representations and omissions by OSTEOMED regarding the OsteoPower System™ and its safety for use.

26. Plaintiff purchased the OsteoPower System™ by OSTEOMED instead of other, safer drills that do not emit a dangerous level of noise.

27. As a result, Plaintiff sustained actual economic damages in the form of the full price of a product that is unsafe and not as advertised.

**CLASS REPRESENTATION ALLEGATIONS**

28. This is a class action brought pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff brings this action individually and on behalf of a "Class" or "Class Members," defined as:

> **All Florida individuals who purchased the OsteoPower System™ by OsteoMed from March 24, 2013 through the present.**
>
> **The following Persons and/or Entities are hereby excluded from the Class:**
>
> a) **Persons and/or entities who timely opt-out of this proceeding using the correct protocol for opting-out that will be formally established by this Court;**

[1] "Consumer" includes any "individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination."

**b) Any and all federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and**

**c) Any persons within the third degree of consanguinity to such judge and/or justice.**

29. The Class' claims all derive directly from a single course of conduct by Defendant. This case is about the responsibility of Defendant, at law and in equity, for its knowledge, conduct, and products and its failure to warn consumers of the dangers associated with the drill. Defendant has engaged in uniform and standardized conduct toward the Class Members. It did not differentiate, in degree of care or candor, its actions or inactions, or in the content of its statements or omissions, among individual Class Members.

30. Furthermore, membership in the Class is so numerous as to make it impracticable to bring all Class Members before the Court. The precise identities and addresses of Class Members can be readily ascertained from Defendant's records, which Defendant is required to maintain under Florida law.

31. There are numerous and substantial questions of law or fact common to all of the members of the Class and which predominate over any individual issues. Included within the common question of law or fact are:

a. Whether Defendant deceptively misled consumers by leading them to believe that the OsteoPower System™ was safe for them to use when it in fact was not;

b. Whether Defendant deceptively misled consumers by failing to disclose that the OsteoPower System™ sold to them emitted dangerous levels of noise;

c. Whether Defendant breached an express or implied warranty relating to the sale and use of the OsteoPower System™;

d. Whether any or all of Defendant's conduct violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 – 213 (2012);

e. Whether Defendant's deception of consumers in Florida constitutes unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices in the conduct of any trade or commerce covered by Fla. Stat. §§ 501.201 – 213 (2012);

f. Whether Defendant was unjustly enriched by such conduct;

g. Whether Plaintiff's and the Class Members' purchase of Defendant's OsteoPower System™ conferred a benefit to Defendant by the Plaintiff and the Class Members and whether it is inequitable for Defendant to retain such benefit without paying Plaintiff and Class Members for the value of the benefit—in essence, the amount of any sums paid by them for the unsafe and misrepresented OsteoPower System™; and

h. Whether Plaintiff and Class Members are entitled to actual damages, disgorgement of the proceeds of sale, injunctive relief or other equitable relief against Defendant; and the proper measure of damages sustained by Plaintiff and Class Members.

32. The claims of the Plaintiff are typical of the claims of Class Members, in that they share the above-referenced facts and legal claims or questions with Class Members, there are a sufficient relationship between the damage to Plaintiff and Defendant's conduct affecting Class Members, and Plaintiff has no interests adverse to the interests other Class Members.

33. Plaintiff will fairly and adequately protect the interests of Class Members and has retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

34. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claim presented in this case predominates over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b. Absent a Class, the Class Members will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court;

e. This action presents no difficulty that would impede its management by the court as a class action which is the best available means by which Plaintiff and

members of the Class can seek redress for the harm caused to them by Defendant; and

f. This action seeks preliminary and permanent injunctive relief and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Defendant to discontinue its unlawful conduct;

35. Because Plaintiff seeks injunctive and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

36. Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute that is the center of this litigation. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members of the Class who are not parties to the adjudication and may impair or impede their ability to protect their interests. As a consequence, class treatment is a superior method for adjudication of the issues in this case.

## **COUNT I**

**Violations of Florida Deceptive and Unfair Trade Practices Act**

**§§ 501.201-501.213, Fla. Stat. (2012)**

37. Plaintiff, on his own behalf and on behalf of the Class Members, repeats and fully incorporates paragraphs 1 - 22 above as if fully set forth in this Count.

38. The Florida Legislature enacted the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") in 1972 to provide strong legal protection to consumers "from those who engage

in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

39. Patterned after the Federal Trade Commission Act, FDUTPA differs in part from its federal counterpart in that it provides a private right of action for declaratory and injunctive relief for "anyone aggrieved by a violation of this part." Fla. Stat. § 501.211(1). FDUTPA also permits an aggrieved party to recover actual damages, plus attorney's fees and court costs. Fla. Stat. § 501.211(1).

40. Plaintiff and all Class Members are "consumers" within the meaning of FDUTPA because they are individuals residing in this State who purchased and received the OsteoPower System™ in this State. Fla. Stat. § 501.203(7) (2012).[2]

41. Defendant is engaged in trade or commerce within the meaning of FDUTPA because Defendant manufactures, provides, distributes, and offers the OsteoPower System™ which is not as represented to consumers in the State of Florida. Fla. Stat. § 501.203(8).

42. In conducting its trade and commerce in Florida, Defendant willfully engaged and directly participated in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices by failing to disclose to consumers that they are purchasing a product that emits dangerous levels of noise that can and does lead to hearing loss.

43. Defendant's unfair and deceptive practices have misled reasonable consumers, such as Plaintiff and members of the Class, and therefore, violated Section 500.04 of the Florida Statutes.

[2] "Consumer" means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination. Fla. Stat. § 501.203.

44. This resulted in detriment to the Class in the form of economic harm as they paid substantial sums of money for the OsteoPower System™ when the product was not as advertised and unsafe for them to use.

45. Defendant has thus engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce. Fla. Stat. § 501.204(1). OSTEOMED's unfair, unconscionable, and deceptive practices offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to consumers in Florida.

46. OSTEOMED'S deception as described herein was and is likely to deceive a consumer acting reasonably in the same circumstances.

47. As a result of Defendant's unfair, unconscionable and deceptive practices as set out herein, Plaintiff suffered a loss, was aggrieved, and suffered actual damages. Plaintiff was aggrieved in that Plaintiff purchased a product that purported to be something that it was not: a safe, reliable product. Plaintiff suffered actual damages in that the market value of the OsteoPower System™ Plaintiff purchased was less than the market value of other equivalent products manufactured and distributed in accordance with Good Manufacturing Practices (GMP) and industry standards and that did not emit dangerous levels of noise. As a deceptively marketed and misrepresented product, the OsteoPower System™ sold to Plaintiff in fact had a market value of zero. As a result of the scheme by OSTEOMED, Plaintiff purchased the drill which resulted in economic harm to Plaintiff, namely the full purchase price of the OsteoPower System™.

48. Accordingly, pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Class Members seek a declaratory judgment and Court Order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

49. Additionally, Plaintiff, on his own behalf and on behalf of the Class Members, make claims for all available damages as well as for attorney's fees and costs as provided in Fla. Stat. §§ 501.211 and 501.2105.

**COUNT II**

**Breach of Express Warranty**

50. Plaintiff, on his own behalf and on behalf of the Class Members, repeats and fully incorporates paragraphs 1 -22 above as if fully set forth in this Count.

51. Defendant's exclusive warranty for the OsteoPower System™ is that "all new OsteoPower components are free from defects in materials and workmanship for a period of one (1) year after the date of shipment from OsteoMed."[3]

52. Despite this warranty, Defendant's drill emits dangerous noise levels.

53. Defendant therefore breached its express warranty and is liable to Plaintiff and the Class Members.

54. Defendant's refusal to warrant its product beyond the paltry warranty quoted above[4] does not absolve OSTEOMED of all liability for its deceptively marketed product.

55. An express warranty is created by an affirmation of fact or promise made by the seller to the buyer that relates to the goods, by any description of the goods that is made part of the basis of the bargain, *or* by any sample or model that is made part of the basis of the bargain. The

[3] *See* OsteoPower System™ Operating Instructions and Maintenance Manual, available at http://www.osteomed.com/Literature/OsteoMed-OsteoPower-Surgical-Guide.pdf.

[4] "[The quoted warranty above] is Purchaser's exclusive remedy and is made in lieu of all other warranties whether written, oral, expressed or implied. There are no warranties which extend beyond this warranty, and this warranty specifically excludes all other expressed or implied warranties for merchantability, fitness for a particular purpose, or otherwise." [4] *See* OsteoPower System™ Operating Instructions and Maintenance Manual, available at http://www.osteomed.com/Literature/OsteoMed-OsteoPower-Surgical-Guide.pdf).

warranty created by any of the above is that the product will conform to the promise, description, sample, or model. Pursuant to Florida Statutes § 672.313, it is not necessary that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, in order for an express warranty to be created.

56. Moreover, in its capacity as warrantor, Defendant had knowledge of the inherent defects in the OsteoPower System™. Therefore its efforts to limit all warranties in a manner that would exclude coverage of the OsteoPower System™ are unconscionable, and any such effort to disclaim, or otherwise limit, liability for the OsteoPower System™ is null and void.

57. Specifically, the limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant and Plaintiff and the Class Members, as, at the time of purchase, Plaintiff and the Class Members had no other options for purchasing warranty coverage.

58. The limitations on the warranties are also substantively unconscionable. Defendant knew that the OsteoPower System™ was defective. Defendant failed to disclose these defects to Plaintiff and Class Members. Thus, Defendant's enforcement of the limitations on those warranties is harsh and shocks the conscience.

**<u>COUNT III</u>**

**Violations of the Magnuson-Moss Warranty Act**

**15 U.S.C. §§ 2301 *et seq.***

59. Plaintiff, on his own behalf and on behalf of the Class Members, repeats and fully incorporates paragraphs 1 -22 above as if fully set forth in this Count and further declares:

60. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

61. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1) provides a claim for relief for any consumer who is damaged by the failure of a warrantor to comply with an expressed or implied warranty.

62. The OsteoPower System™ is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

63. Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

64. Defendant is a "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

65. Defendant warranted that the OsteoPower System™ was fit for its ordinary purpose as an oral surgical bone drill, that it would pass without objection in the trade as designed, manufactured, and marketed, and that it was adequately designed and manufactured.

66. Defendant breached these warranties, as described in more detail above, and is therefore liable to Plaintiff and the Class Members pursuant to 15 U.S.C. § 2310(d)(1).

67. In its capacity as warrantor, as Defendant had knowledge of the inherent defects in the OsteoPower System™, its efforts to limit the implied warranties in a manner that would exclude coverage of the OsteoPower System™ are unconscionable, and any such effort to disclaim, or otherwise limit, liability for the OsteoPower System™ is null and void.

68. The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant and Plaintiff and the Class Members, as, at the time

of purchase, Plaintiff and the Class Members had no other options for purchasing warranty coverage other than directly from Defendant.

69. The limitations on the warranties are substantively unconscionable. Defendant knew that the OsteoPower System™ was defective. Defendant failed to disclose these defects to Plaintiff and Class Members. Thus, Defendant's enforcement of the limitations on those warranties is harsh and shocks the conscience.

70. Plaintiff and the Class Members have had sufficient direct dealings with Defendant or its distributors to establish privity of contract.

71. Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

72. Furthermore, affording Defendant an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale of each OsteoPower System™, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations concerning the OsteoPower System™'s inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resorts to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

73. Plaintiff and Class Members would suffer economic hardship if they returned their OsteoPower Systems™ but did not receive the return of payments made by them. Defendant has

no available cure, Plaintiff and Class Members have not re-accepted their OsteoPower Systems™ by retaining them.

74. Pursuant to 15 U.S.C. § 2310(d)(3), the amount in controversy of Plaintiff's and each Class Member's individual claim exceeds the sum of $25. The total amount in controversy in this Class action exceeds the sum of $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. The size of the Plaintiff Class meets or exceeds 100 members. Plaintiff, on behalf of the other Class Members, seeks all damages permitted by law, including diminution in value of their OsteoPower Systems™, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and Class Members in connection with the commencement and prosecution of this action.

**COUNT IV**

**Common Law Assumpsit**

**(Monies Had and Received)**

75. Plaintiff, on his own behalf and on behalf of the Class Members, repeats and fully incorporates paragraphs 1 - 22 above as if fully set forth in this Count.

76. Plaintiff's and the Class Members' purchase of Defendant's misrepresented and unsafe bone cutting drill conferred a benefit on Defendant because Plaintiff and the Class Members believed the OsteoPower System™ for which they paid was as represented when, in fact, it was something different.

77. Defendant intentionally provided Plaintiff and the Class Members with a

misrepresented and misleading product and realized a profit. Defendant has fully appreciated, accepted, and retained this benefit under circumstances that make it inequitable for Defendant to retain it without paying Plaintiff and Class Members for its value.

78. Plaintiff, on his own behalf and on behalf of the Class Members, expressly disaffirms the purchase of the unsafe and misrepresented drill and seeks equitable relief to restore the parties to their original position.

## AFFIRMATIVE PLEADINGS

79. Plaintiff, on his own behalf and on behalf of the Class Members, affirmatively represents that this case is not an attempt to privately enforce the Federal Food, Drug, and Cosmetic Act. Similarly, this case is not an attempt to privately enforce the Florida Drug and Cosmetic Act or any other Florida regulatory law.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff, on his own behalf and on behalf of the Class Members, seeks judgment against Defendant as follows:

A. Certification of this case as a class action;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as Class Counsel;

D. On Count I, that Plaintiff and Class Members be awarded actual damages, in an amount as the Court or Jury may determine, as well as attorneys' fees and all litigation costs pursuant to Fla. Stat. §§ 501.211 and 501.2105;

E. On Count II, that the Defendant's profits derived from Defendant's unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices be disgorged and awarded

as damages in favor of Plaintiff and Class Members, together with interest and an award of attorneys' fees and court costs;

F. On Count III, awarding injunctive under Fla. Stat. § 501.211(1) as requested;

G. Granting the request for expedited discovery; and

H. Awarding Plaintiff and Class Members such other equitable and legal relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on issues so triable.

Dated: August 28, 2017

By: *_/s/ Tod Aronovitz_*
Tod Aronovitz (FBN 186430)
ta@aronovitzlaw.com
Barbara Perez (FBN 989304)
bp@aronovitzlaw.com
**ARONOVITZ LAW**
2 South Biscayne Boulevard
One Biscayne Tower, Suite 3700
Miami, FL 33131
(305) 372-2772 Telephone
(305) 397-1886 Facsimile

Bruce W. Steckler
(*Pro hac vice* forthcoming)
bruce@stecklerlaw.com
L. Kirstine Rogers
(*Pro hac vice* forthcoming)
krogers@stecklerlaw.com
**STECKLER GRESHAM COCHRAN, PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
(972) 387-4040 Telephone
(972) 387-4041 Facsimile